1
2
3
4

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

7

| | |
|---|---|
| DEBORAH KENNEDY, )<br>                                        )<br>                          Plaintiff, )<br>                                        )<br>vs.                                     )<br>                                        )<br>MICHAEL J. ASTRUE, *et al.*,            )<br>                                        )<br>                          Defendants. )<br>_____) | Case No. 2:10-cv-01136-LDG-GWF<br><br>**REPORT AND<br>RECOMMENDATION**<br><br>Motion to Reverse or Remand (#25)<br>Cross-Motion to Affirm (#27) |

        This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Deborah Kennedy's claim for disability benefits under Title II of the Social Security Act.  Plaintiff's Complaint (#9) was filed February 7, 2011.  Defendant's Answer (#18) was filed March 11, 2011, as was a certified copy of the Administrative Record (the "A.R."). *(See* #19)  This matter has been submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on Kennedy's Motion to Reverse or Remand (#25), filed on November 10, 2011; the Commissioner's Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal and/or Remand (#26, #27), filed on December 16, 2011; and Plaintiff's Opposition to Cross-Motion and Reply to Opposition (#30, #31), filed on  February 10, 2012.

## BACKGROUND

        Plaintiff Deborah Kennedy, appearing pro se, seeks judicial review of Administrative Law Judge ("ALJ") Michael B. Kennett's decision dated April 21, 2009. (Certified Administrative Record (A.R. 24-29.)  The issue before the Court is whether the Plaintiff was disabled  from her alleged onset date of September 20, 2005 until her date last insured on June 30, 2006.

. . .

**A.      Procedural History**

On June 4, 2007, Plaintiff protectively filed an application for a period of disability and disability insurance benefits.  Plaintiff's amended alleged onset date of disability is September 20, 2005. (A.R. 61.)  The agency denied Plaintiff's application initially on August 2, 2007, and upon reconsideration on December 20, 2007.  (A.R. 54-57, 62-66.)  On January 7, 2008, Plaintiff requested a hearing before an ALJ.  (A.R. 67.)  At the hearing conducted on March 4, 2009, Plaintiff, with her attorney, appeared and testified before the ALJ. (A.R. 30-51.)  Vocational expert Kenneth Lister also testified. (A.R. 30-51.)  The ALJ's April 21, 2009 decision found that Plaintiff was not disabled from her alleged onset date of September 20, 2005 until her date of last insured on June 30, 2006. (A.R. 24-29.)  Plaintiff subsequently requested review by the Appeals Council, which was denied.  (A.R. 1-4.)  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  This matter was referred to the undersigned for a report of findings and recommendations pursuant to the provisions of 28 U.S.C. §§ 636 (b)(1)(B) and (C).

**B.      ALJ Kennett's April 21, 2009 Decision**

In a written decision issued on April 21, 2009, ALJ Kennett found that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act through June 30, 2006, the date of last insured.  The two issues presented for review were (1) whether the insured status requirements of sections 216(I) and 223 of the Social Security Act were met and (2) whether the claimant was disabled under sections 216(I) and 223(d) of the Social Security Act.

Upon review of Plaintiff's earning records, the ALJ found that Plaintiff had acquired sufficient quarters of coverage to remain insured through June 30, 2006.  The ALJ therefore found that Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (A.R. 24.)

In determining whether Plaintiff was disabled, the ALJ used the five-step sequential evaluation process established by the Social Security Administration.  20 CFR 404.1520(a). The ALJ found that Plaintiff did not engage in substantial gainful activity (SGA) during the period from September 20, 2005 until June 30, 2006.  (A.R. 26.)  Next, after examining the medical records provided, the ALJ concluded that Plaintiff had the following severe impairments: status-

post mastectomy and systematic lupus erythematosus (SLE) in remission. [1] (A.R.26-27.)  At step

three, the ALJ found that neither of Plaintiff's impairments reached a level of severity that would

have prevented her from working for a period of 12 consecutive months. (A.R. 27.)  The ALJ

therefore found that Plaintiff did not have an impairment or combination of impairments that met

or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(A.R. 27.)

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional

capacity (RFC) to perform the full range of light work.  In making this determination, the ALJ

considered the Plaintiff's symptoms that can reasonably be accepted as consistent with objective

medical evidence and any opinion evidence presented.  (A.R. 27.)  When examining Plaintiff's

symptoms, the ALJ followed a two-step process of first examining the underlying medically

determinable impairment that could reasonably be expected to produce the symptoms. (A.R. 27.)

Once the underlying impairment has been established, the ALJ must then evaluate the intensity,

persistence and limiting effects of those symptoms. (A.R. 28.)  The Plaintiff alleged disability

based on her SLE, asthma, deep vein thrombosis, blood clots and breast cancer.  Plaintiff alleged

that her impairments caused fatigue and prevented her from walking for long periods of time such

that she was unable to work. (A.R. 28.)  The ALJ determined that Plaintiff's inability to stand or

walk for long periods of time was not documented in the medical evidence prior to her date of last

insured, and therefore concluded that evidence provided did not support a finding that Plaintiff was

unable to perform any kind of work.  (A.R. 28.)

The ALJ next considered the opinion evidence presented and found that no weight should

be given to Dr. Patrick Tieman's opinion that Plaintiff could not work and maintain a job. (A.R.

---

[1]  Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro- and anti-coagulant proteins that may occur in a highly variable pattern. 20 C.F.R. Part 404, Subpart P, Appendix 1 §14.02 (1)(a)

28.)  The ALJ noted Dr. Tieman's letter was dated January 14, 2008, well after the date of last

insured and provided no basis for his opinion. (A.R. 28.)  The ALJ found no other evidence in the

record to support Plaintiff's inability to work, finding that the majority of the evidence presented

was dated well before the alleged onset date or well after the date of last insured. (A.R. 28.)  The

ALJ also considered that on December 14, 2007 the State Agency found that there was insufficient

evidence to find Plaintiff disabled. (A.R. 28.)  Based on the above findings, the ALJ found that

Plaintiff's residual functional capacity (RFC) of light work was supported by objective medical

evidence. (A.R. 28.)

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a

real estate salesperson and bookkeeper/administrative officer.  The ALJ compared Plaintiff's

residual functional capacity with the physical and mental demands of her past work and found that

she was able to perform the past work as actually and generally performed.  Based on this finding,

the ALJ concluded that Plaintiff was not under a disability at any time from September 20, 2005,

the alleged onset date, through June 30, 2006, her date of last insured.

## DISCUSSION

### I.   Standard of Review

District courts review administrative decisions in social security benefits cases under 42

U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute

provides, in relevant part, that "[a]ny individual, after any final decision of the Commissioner of

Social Security made after a hearing to which he was a party, irrespective of the amount in

controversy, may obtain a review of such decision by a civil action . . . brought in the district court

of the United States for the judicial district in which the plaintiff resides."  42  U.S.C. § 405(g).  42

U.S.C. § 405 (g) provides that the district court may enter, "upon the pleadings and transcripts of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing."  The Ninth Circuit reviews a

decision of a district court affirming, modifying or reversing a decision of the commissioner *de

novo.  Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

. . .

1    The Commissioner's findings of fact are conclusive if supported by substantial evidence.

2    42 U.S.C. § 405(g).  The findings may be set aside however if they are based on legal error or are

3    not supported by substantial evidence.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  The

4    Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a

5    preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

6    support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Lewis v.*

7    *Apfel*, 236 F.3d 503 (9th Cir. 2001).  In determining whether the Commissioner's findings are

8    supported by substantial evidence, the court "must review the administrative record as a whole,

9    weighing both the evidence that supports and the evidence that detracts from the Commissioner's

10   conclusion."  *Reddick v. Chater*, 157 F.3rd 715, 720 (9th Cir. 1998); *see also Smolen*, 80 F.3d at

11   1279 (holding that courts must weigh both the evidence that supports and the evidence that detracts

12   from the Commissioner's conclusion).  Under the substantial evidence test, the Commissioner's

13   findings must be upheld if supported by inferences reasonably drawn from the record.  *Batson,* 359

14   F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must

15   defer to the Commissioner's interpretation.  *Id*.  If the evidence can reasonably support either

16   affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's

17   judgment.  *Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995).

18          It is incumbent on the ALJ to make specific findings so that the court need not speculate as

19   to the findings.  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (*citing Baerga v.*

20   *Richardson*, 500 F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine

21   whether the Commissioner's decision is supported by substantial evidence under 42 U.S.C. §

22   405(g), the ALJ's findings "should be as comprehensive and analytical as feasible and, where

23   appropriate, should include a statement of subordinate factual foundations on which the ultimate

24   factual conclusions are based."  *Lewin*, 654 F.2d at 635.

25   **II.**    **Disability Evaluation Process**

26          To qualify for disability benefits under the Social Security Act, a claimant must show that:

27          (a)    he suffers from a medically determinable physical or mental
                   impairment that can be expected to result in death or that has lasted
28                 or can be expected to last for a continuous period of not less that

| | | twelve months; and |
|---|---|---|
| | (b) | the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. |

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If a claimant establishes an inability to perform his prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

A plaintiff seeking Social Security disability benefits is also required to prove that he became disabled on or before his date last insured ("DLI"). *Flaten*, 44 F.3d at 1458-1459; *see also* 20 C.F.R. § 404.1520; *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991) (*per curiam*). To qualify for social security disability benefits, a claimant must be fully insured and have at least twenty quarters of coverage in the forty-quarter period which ends with the quarter in which the disability occurred. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b). "[T]estimony from family, friends, and neighbors are all relevant to the determination of a continuously existing disability with onset prior to expiration of insured status." *Flaten*, 44 F.3d at 1461 n.5 (*citing Hartman v. Bowen*, 636 F. Supp. 129 (N.D. Cal. 1986)). The requirement that an individual seeking benefits be insured at the time the individual suffers the disability is intended to "encourage individuals who have previously suffered from a disability to return to substantial gainful employment when their medical condition improves sufficiently to allow them to do so." *Flaten*, 44 F.3d at 1459 (*citing* S. Rep. No. 1856, 86th Cong., 2d Sess. (1960), *reprinted in* 1960 U.S.C.C.A.N. 3608, 3623-3625).

. . .

. . .

6

III.   **Analysis of the Plaintiff's alleged disability**

Social Security disability claims are evaluated under a five-step sequential evaluation procedure.  See 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The claimant carries the burden with respect to steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary.  20 C.F.R. § 404.1520(a).  Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity.  *Id.* § 416.920(b).  If so, the claimant is not considered disabled.  *Id.* § 404.1520(b).  Second, the Secretary determines whether the claimant's impairment is severe.  *Id.* § 416.920(c).  If the impairment is not severe, the claimant is not considered disabled.  *Id*. § 404.152(c).  Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment.  *Id.* § 404.1520(d).  If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work.  *Id*. § 416.920(e).  If the claimant can engage in past relevant work, then no disability exists.  *Id.* § 404.1520(e).  If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work.  *Id.* § 404.1520(f).  If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits.  *Id.* § 404.1520(a).

In applying the first two steps of the sequential evaluation under 20 C.F.R. § 404.1520(a), ALJ Kennett found that (1) Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision and (2) Plaintiff's status-post radical mastectomy and systematic lupus erythematosus (SLE) were considered severe.  Neither party disputes these findings.

Plaintiff however challenges several aspects of the ALJ's decision.  The issues are (1) whether the ALJ erred at step three of the analysis in finding that Plaintiff's disability never reached the level of severity that would have prevented her from working for a period of 12 continuous months; (2) whether there was substantial evidence to support that Plaintiff had a RFC that allow her to perform a full range of light work; and (3) whether the ALJ properly found that Plaintiff

7

1   could perform her past relevant work.  Additionally, there is evidence contained in the

2   Administrative Record that was submitted to the Appeals Council, but which was not provided to

3   the ALJ when he made his decision.  Plaintiff also submitted additional evidence to this Court to

4   support her arguments.  In analyzing Plaintiff's case, the Court must first determine what evidence

5   can be considered and for what purpose it can be considered.

6         **A.**    **Evidence before the Court.**

7             **i.**       **Evidence submitted to the Appeals Council**.

8         Plaintiff's Motion to Remand (#25) attaches and references evidence that was submitted to

9   the  Appeals Council, but was not available to the ALJ in making his decision.   The Commissioner

10   argues that the Court may only consider the evidence that was before the ALJ.  If the Appeals

11   Council denies a request for review, the ALJ's decision becomes the final decision.  *See* 20 C.F.R.

12   § 404.981.  The Commissioner argues that this Court lacks jurisdiction to review the decision of

13   the Appeals Council, and therefore cannot consider the evidence submitted in conjunction with

14   Plaintiff's request for Appeals Council review. *See* 42 U.S.C. § 405(g).

15         The Ninth Circuit has held that additional materials submitted to the Appeals Council can

16   be considered by the Court in some circumstances.  *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th

17   Cir. 2000) and *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir.1993)(evidence submitted to the Appeals

18   Council was reviewed where the parties agreed it should be considered).  In *Harman*, the Ninth

19   Circuit stated that because the Appeals Council addressed the additional evidence in the context of

20   denying the claimant's request for review, the court could properly consider that evidence on

21   review. 211 F.3d at 1180.  The court further stated

22             [w]hile we properly may consider the additional evidence presented
to the Appeals Council in determining whether the Commissioner's

23             denial of benefits is supported by substantial evidence, it is another
matter to hold on the basis of evidence that the ALJ has had no

24             opportunity to evaluate that Appellant is entitled to benefits as a
matter of law. The appropriate remedy in this situation is to remand

25             this case to the ALJ; the ALJ may then consider, the Commissioner
then may seek to rebut and the VE then may answer questions with

26             respect to the additional evidence.

27   *Harman*, 211 F.3d at 1180.

28   . . .

1   Here, the Appeals Council incorporated the additional evidence submitted by Plaintiff into

2   the record at Exhibits 14E and 25F, and reviewed that evidence in making its decision to deny

3   Plaintiff's request for review.  (A.R. 1-5.)   The Court will therefore follow the controlling law and

4   review the ALJ's decision for error along with examining the evidence presented to the Appeals

5   Council in determining whether remand is warranted.

6   **ii.     Extra-Record evidence submitted by Plaintiff**.

7   In support of her Motion to Remand or Reverse (#25), Plaintiff also submitted several

8   additional documents including a 2004 application for family or medical leave, and the employer's

9   denial of the application, attached as Exhibit A;  a 2004 physician's note recommending one month

10   of medical leave, attached as  Exhibit B; a summary of physician visits from September 2004 to

11   February 2005, attached as Exhibit C;  a printout summary of SSA's evaluation process for immune

12   system disorders from the SSA website, attached as Exhibit K; and a 2011 opinion letter from Dr.

13   Tieman, attached as  Exhibit L.  In Reply to the Commission's Cross-Motion to Affirm, Plaintiff

14   further submitted a job description of timeshare sales from eHow.com, attached as Exhibit C; a job

15   listing from careerbuilder.com for timeshare sales representative, attached as  Exhibit D; and an

16   expert report from Adato Vocational Services, Inc dated January 27, 2012, attached as Exhibit G.

17   Because none of these document are contained within the administrative record, these documents

18   are considered extra-record evidence.  Extra-record evidence is not judicially reviewable. *See*

19   *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988); *see also City and County of San Francisco v.*

20   *Engen*, 819 F.2d 873, 874-75 (9th Cir.1987) (mere FAA staff recommendation is not judicially

21   reviewable under 49 U.S.C.A.App. § 1486 (West Supp.1987).

22   The Court however may consider extra-record evidence in making a determination of

23   whether remand is proper.  *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990). Under 42

24   U.S.C. § 405(g), remand is warranted only if there is new evidence that is material and there was

25   good cause for the late submission of the evidence.  "New evidence is material if it 'bear[s] directly

26   and substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that the new

27   evidence would have changed the outcome of the ... determination.'" *Bruton v. Massanari*, 268

28   F.3d 824, 827 (9th Cir. 2001) (citations omitted).  If new information surfaces after the Secretary's

9

1    final decision and that evidence could not have been obtained at the time of the administrative

2    proceeding, the good cause requirement is satisfied. *See Booz v. Secretary of Health and Human*

3    *Services*, 734 F.2d 1378, 1380 (9th Cir.1984).

4         The Court finds that the following documents do not constitute new and material evidence:

5    the summary of physician visits from September 2004 to February 2005 attached as Exhibit C to

6    Plaintiff's Motion (#25); the printout summary of SSA's evaluation process for immune system

7    disorders from the SSA website attached as Exhibit K to Plaintiff's Motion (#25); the job

8    description of timeshare sales from eHow.com attached as Exhibit C to Plaintiff's Reply (#31); and

9    the job listing from careerbuilder.com for timeshare sales representative attached as Exhibit D to

10   Plaintiff's Reply (#31).  Each of the above documents is an online printout that does not bear

11   substantially on a matter in dispute and would not likely change the ALJ's determination.  This

12   extra-record evidence will not be considered by the Court.

13        Plaintiff also submitted an expert report from a vocational expert, dated January 27, 2012.

14   *(See Plaintiff's Reply (#31)* at Exhibit G.)  The report evaluates Plaintiff's case and challenges the

15   vocational expert's opinion and the ALJ's determination.  The Court finds that this evidence is

16   material, in that it bears directly on whether Plaintiff was disabled.  The Court further finds that

17   Plaintiff has not shown good cause for her failure to previously provide such report for

18   consideration by the ALJ or even by the Appeals Council.  The report was prepared after Plaintiff

19   filed her Complaint (#9) and Motion to Reserve or Remand (#25).  It was only after Defendant filed

20   its Cross-Motion to Affirm (#26) that Plaintiff requested additional time to file her Reply (#31),

21   claiming that she had hired an expert witness to review her medical records.  (*See* #28.)  In an

22   attempt to demonstrate good cause for the failure to previously provide this report, Plaintiff states

23   that she "cannot say as to why [her] counsel did not include the material into the Administrative

24   record." (*See Plaintiff's Reply (#31)* at 5.)

25        Even if the Court accepted this explanation, it would not excuse Plaintiff's failure to timely

26   obtain and introduce the report.  Plaintiff has been representing herself in this action from its

27   initiation on July 12, 2010.  It was only after Plaintiff  received Defendant's Cross-Motion to

28   Affirm that she obtained the vocational expert's evaluation.  A claimant does not meet the good

cause requirement simply by obtaining a favorable report from an expert witness once their claim is denied. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985).  The "good cause" requirement would "be meaningless if such circumstances were sufficient to allow introduction of new evidence." *See generally  Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir.1984). The Court therefore cannot consider the report submitted by Plaintiff with her Reply brief.

The Court will examine whether the ALJ erred in his decision and then determine whether the other new evidence submitted by Plaintiff supports an order remanding this matter for additional proceedings.

**B.**   **ALJ did not err at step three of the analysis in finding that Plaintiff's disability never reached the level of severity that would have prevented her from working for a period of 12 continuous months.**

At step three of the analysis, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1.  If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.  *Id.* § 404.1520(d).  C.F.R. § 404.1525(c)(4) provides the following guidance in evaluating a listed impairment.

> Most of the listed impairments are permanent or expected to result in death. For some listings, we state a specific period of time for which your impairment(s) will meet the listing. For all others, the evidence must show that your impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months.

Plaintiff's SLE is a listed impairment; however no specific period of time is identified. *See* 20 C.F.R. § 404, Subpt. P, App. 1. §14.02.  Therefore, the medical evidence must show that Plaintiff's impairment has lasted or can be expected to last for a continuous period of at least 12 months.  After examining the evidence, the ALJ found that "the claimant's medical condition never reached the level of severity that would have prevented her from working for a period of 12 continuous months. " (A.R. 27.)

Plaintiff argues that the ALJ erred in making this finding.  Plaintiff claims that she was advised by her treating physician to take medical leave from work, and in fact, she applied for such leave under the Family Medical Leave Act (hereinafter "FMLA").  Plaintiff further claims that she accumulatively missed several months from work.  Upon review of the record, there was no evidence before the ALJ to support this argument.  Furthermore, no additional evidence was

11

1   submitted to the Appeals Council that supports this argument.  Instead, Plaintiff relies on extra-

2   record evidence submitted with her motion. This includes a 2004 application for leave under

3   FMLA and her employer's response (*see Plaintiff's Motion (#25)* at Exhibit A), and a handwritten

4   physician note from Southwest Medical Associates dated May 6, 2004 indicating that Plaintiff is

5   "advised 1 month medical leave." (*Id.* at Exhibit B.)  The Court finds that this evidence is not

6   material.  The documents are dated, and the events described therein occurred more than one year

7   prior to Plaintiff's alleged onset of disability.  Although such evidence can be relevant in the

8   disability determination, the physician's May 6, 2004 note recommended only one month medical

9   leave. (*Id.*)  The fact that Plaintiff applied for medical leave does not support a finding that her

10  impairments lasted or could be expected to last for a continuous period of at least 12 months.  The

11  Court therefore finds that this extra-record evidence is not material in determining whether Plaintiff

12  was disabled prior to June 2006.

13      **C.   There was substantial evidence to support the ALJ's finding that Plaintiff had
            a residual functional capacity allow her to preform a full range of light work.**

14

15      Considering Plaintiff's symptoms in connection with her underlying impairments,  the ALJ

16  found that Plaintiff had the residual functional capacity to perform a full range of light work.  Light

17  work is defined in 20 C.F.R. §404.1567(b) as follows:

18          Light work involves lifting no more than 20 pounds at a time with
            frequent lifting or carrying of objects weighing up to 10 pounds.
19          Even though the weight lifted may be very little, a job is in this
            category when it requires a good deal of walking or standing, or when
20          it involves sitting most of the time with some pushing and pulling of
            arm or leg controls. To be considered capable of performing a full or
21          wide range of light work, you must have the ability to do
            substantially all of these activities. If someone can do light work, we
22          determine that he or she can also do sedentary work, unless there are
            additional limiting factors such as loss of fine dexterity or inability to
23          sit for long periods of time.

24      In finding that Plaintiff had a residual functional capacity to perform a full range of light

25  work, the ALJ rejected the opinion of Plaintiff's treating physician Dr. Tieman.   "Generally, a

26  treating physician's opinion carries more weight than an examining physician's, and an examining

27  physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246

28  F.3d 1195, 1202 (9th Cir. 2001).   If the treating physician's "opinion on the issue(s) of the nature

1   and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and

2   laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it

3   should be afforded more weight. 20 CFR 416.927(d)(2).  The ALJ need not accept an opinion of a

4   physician - even a treating physician - if it is conclusory and brief and is unsupported by clinical

5   findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Where the treating doctor's

6   opinion is not contradicted by another doctor, it can be rejected only for "clear and convincing"

7   reasons, and even if a treating physician's opinion is contradicted by another doctor, the treating

8   physician's opinion may not be rejected without providing "specific and legitimate reasons"

9   supported by substantial evidence in the record for so doing.  *Lester v. Charter*, 81 F.3d 821, 831

10  (9th Cir. 1996).

11          Plaintiff argues that the ALJ erred in disregarding Dr. Tieman's opinion evidence.  Plaintiff

12  claims that Dr. Tieman's opinion should be given more weight because he is her treating physician

13  and he properly concluded that Plaintiff was unable to work from November 2005 due to her lupus

14  and other medical conditions.  A review of Dr. Tieman's opinion, however, shows that the ALJ

15  properly gave it no weight.

16          There are two separate letters from Dr. Tieman.  The first letter dated January 14, 2008 was

17  part of the record before the ALJ.  (A.R. 446)  This letter is addressed "to whom it may concern"

18  and states that Plaintiff "has a lot of chronic medical problems upmost is lupus... My opinion is, she

19  cannot work and maintain a job." (*Id.*)  The ALJ noted that this letter was dated well after the

20  Plaintiff's date of last insured status and therefore gave it no weight.  (A.R. 28.)  The ALJ did not

21  err in giving this opinion no weight.  First, Dr. Tieman's opinion is conclusory, brief and does not

22  cite any clinical findings to support the conclusion.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

23  Cir. 1992).  Second, the letter states that Plaintiff could not work as of the date of the letter, but

24  provides no opinion or evaluation as to whether she was disabled as of June 2006.

25          Dr. Tieman's second letter is dated November 2, 2011.  (*See Plaintiff's Motion (#25)* at

26  Exhibit L.)  It is substantially similar to the first letter with the exception of an additional sentence

27  stating: "She couldn't work from November 2005 to January 2008 because of the above problems."

28  (*Id.*)  Although this letter bears on the time period at issue, it is also conclusory, brief and

1   unsupported by medical evidence.  Plaintiff has also not shown good cause as to why this opinion

2   was not submitted to the ALJ or to the Appeals Council.

3         Plaintiff argues that the ALJ erred in finding that the Plaintiff's alleged fatigue and inability

4   to stand and walk for long periods is not documented in the medical evidence.  The Court finds

5   however that the ALJ's decision was supported by substantial evidence.  Most of the medical

6   evidence submitted by Plaintiff was from 2004, prior to the onset of her alleged disability, or after

7   2007, which was after the date of her last insured status.  The evidence relating to the relevant time

8   period does not document Plaintiff's fatigue or inability to stand and walk for long periods of time.

9   Medical evidence from December 2004, indicates that Plaintiff was treated for abdominal pain,

10  UTI and Gallbladder disease. (A.R. 197, 208.)  In June of 2005, Plaintiff was treated for an allergic

11  reaction to an insect bite. (A.R. 217.)  In October of 2006, Plaintiff was seen for a follow-up

12  examination relating to her history of breast cancer.  (A.R. 282.)  In December of 2006, Plaintiff

13  was seen for sudden swelling of the neck.  (A.R. 223.)  These reports do not indicate, however, that

14  Plaintiff suffered from fatigue or the inability to stand and walk for long periods of time.

15        Plaintiff only points to medical evidence that was submitted to the Appeals Council in

16  arguing that the ALJ erred in his determination.   A progress note from June 30, 2005 indicates that

17  Plaintiff complained of "feet and ankle discomfort along with back pain. She also complained of

18  some increased fatigue; however she admitted that she was not exercising regularly." (A.R. 605.)

19  The medical provider noted that the majority of Plaintiff's complaints appear to be related to her

20  "lupus, which is not well controlled apparently." (*Id.*)  Plaintiff was prescribed methotrexate to help

21  with her symptoms. (A.R. 606.)  A lumbar spine x-ray indicated only mild degenerative changes.

22  (A.R. 607.)  On September 7, 2005, Plaintiff appeared for a follow-up visit where it was noted that

23  the  "methotrexate is helping with her joints. Overall, she feels better in relation to her lupus."

24  (A.R. 616.)  Plaintiff's main concern at this visit was that "she had an office party last week and she

25  decided to dance... she also complains of increased fatigue since that time..." (*Id.*)  Plaintiff further

26  complained of having to stop and take rests during long walks. (*Id.*)  Overall, her SLE was noted as

27  well controlled, with only some tenderness in her joints. (*Id.*)

28  . . .

On November 11, 2005, Plaintiff presented for another follow-up visit.  The progress note indicates that "overall she is doing good... she denies any flare-ups of her lupus." (A.R. 625.)   Her only concern at this visit was abdominal pain.  Her lupus was noted as well controlled and her back pain and shortness of breath were both stable. (*Id.*)  In January 2006, Plaintiff presented with left upper quadrant pain, possibly caused by stones. (A.R. 646.)  At this visit, Plaintiff did not complain of increased fatigue or inability to walk. She only mentioned pain around her back and groin. (A.R. 646.)  On April 17, 2006,  Plaintiff presented with pain in her left ear. (A.R. 654.)  Plaintiff also indicated that for the past week she had problems with right lower leg swelling and pain. (A.R. 654-55.)  On April 22, 2006, an ultrasound was conducted of the Plaintiff's right leg.  The report stated that "there was no evidence of deep venous thrombosis in the femeral or popliteal veins." (A.R. 656.)  On April 25, 2006, Plaintiff went to the urgent care with complaints of pain in the right knee. (A.R. 664.)  A test indicated "mild marginal spurring in the medial compartment of the knee." (A.R. 667.)

On May 19, 2006, Plaintiff presented for another follow-up visit where she stated "that she has been going good until about a month ago." (A.R. 671. )  Her only complaint was knee pain. (*Id.*) The progress note indicated that her lupus was well-controlled at present and her back pain and shortness of breath were stable. (*Id.*)  The provider recommended an injection in her knee to relieve the pain. (*Id.*)  Plaintiff presented for a follow-up visit on October 2, 2006.  She indicated that the injection did not help with her knee pain.  (A.R. 680.)  Plaintiff also indicated however that she traveled to Iowa for the month of August, and during that time she stopped taking one of her medications and her knee pain went away.  (*Id.*)  Plaintiff however indicated that after she returned home, her pain returned. (*Id.*)  Plaintiff also stated that she has recently experienced shortness of breath.  (*Id.*)  Her lupus was noted as overall well controlled and a treatment plan was implemented to address her knee pain and her other complaints.  On October 24, 2006, Plaintiff presented with multiple complaints, including leg pain. (A.R. 695.)  Plaintiff indicated the she was going to take exercise classes at her local health club. (*Id.*)  The provider noted that the problem with her legs was caused by her weight and her osteoarthritis. (*Id.*)  Plaintiff presented for another follow-up visit on November 15, 2006, where she indicated that she cannot walk for long distances due to

1   increased pain in her knees. (A.R. 703.)  It was further noted that her "lupus appears to be well

2   controlled from a laboratory and physical examination standpoint." (A.R. 703.)

3       A review of the medical evidence summarized above, demonstrates that during the relevant

4   period of time, from September 2005 until June 2006, Plaintiff's lupus and symptoms appeared to

5   be well controlled overall.  Plaintiff had only occasional complaints of fatigue and knee/leg pain.

6   Her complaints of pain seemed to increase in April and May of 2006, subsided in August, and then

7   returned in October 2006.  The medical evidence supports the finding that Plaintiff's pain did not

8   prevent her from walking long distances or standing until November 2006.  The objective medical

9   evidence supports the conclusion that from the period of September 2005 to June 2006, Plaintiff

10   was able to do a good deal of walking or standing such that she could perform a full range of light

11   work as defined in 20 C.F.R. § 404.1567(b).  Even considering the evidence submitted to the

12   Appeals Council, there was no err in finding that Plaintiff had the residual functional capacity to

13   preform a full range of light work.

14       **D.**    **The ALJ did not err in finding that Plaintiff could perform her past relevant**

15            **work**.

16       The ALJ found that Plaintiff was capable of performing her past relevant work as a real

17   estate salesperson and bookkeeper/administrative officer. (A.R. 28-29.)  Based on the Dictionary

18   of Occupational Titles, the vocational expert testified that work as a real estate sales person is

19   skilled work requiring light exertion levels and that work as a bookkeeper and administrative

20   officer is skilled sedentary work. (A.R. 46-47.)  Because it was determined that Plaintiff could

21   perform a full range of light work, the ALJ found that Plaintiff was capable of performing her past

22   relevant work (A.R. 27-29.)

23       Plaintiff argues that the ALJ and vocational expert Kenneth Lister erred in classifying her

24   past relevant work.  Plaintiff maintains that she has not been professionally employed as a

25   bookkeeper.  Plaintiff also claims that the vocational expert stated that Plaintiff's work as a

26   bookkeeper does not meet the specific vocational preparation (SVP), and therefore the ALJ should

27   . . .

28   . . .

1    not have considered it in making his decision.[2]  Plaintiff further argues that she was not employed
2    as a real estate salesperson, but rather is a timeshare agent.  Plaintiff argues that a timeshare agent
3    does not hold a real estate license issued by the state whereas a real estate sales agent does.

4        The ALJ conducted a hearing in this matter on March 4, 2009. (A.R. 30-50.)   At the
5    hearing, the vocational expert characterized Plaintiff's past work as a real estate sales person, a
6    bookkeeper and an administrative officer. (A.R. 47.)   Near the end of the hearing, the vocational
7    expert indicated that Plaintiff may not have performed enough hours as a bookkeeper to meet the
8    SVP criteria, stating "[i]ts up to you [ the ALJ] whether you want to keep that or not. As she
9    performed it, it was sedentary but you know, four hours a week or something." (A.R. 49.)  Plaintiff
10   however subsequently testified that the time she spent as a bookkeeper depended on how many
11   checks were written, explaining that at times she spent four hours per week while at other times, it
12   was ten or fifteen hours per week.  (A.R. 49.)   Considering all the testimony and evidence
13   adduced at the hearing, the ALJ's decision to consider Plaintiff's work as a bookkeeper as past
14   relevant work was not in error.  Plaintiff testified that she performed the duties of a bookkeeper,
15   and the ALJ relied upon that testimony.  Neither Plaintiff nor her counsel objected to the ALJ's
16   determination that Plaintiff was a bookkeeper.  Ultimately,  however Plaintiff's work as a
17   bookkeeper is irrelevant in light of Plaintiff's residual functional capacity.  Bookkeeping is
18   considered a sendentary job, and  "[i]f someone can do light work ... he or she can also do
19   sedentary work..." 20 C.F.R. §4041567(b).

20        The Court further finds the ALJ did not err in classifying Plaintiff's past relevant work as a
21   real estate sales person.[3]  The ALJ requested the vocational expert explain Plaintiff's past relevant

22   _____

23        [2] SVP is the amount of lapsed time required by a typical worker to learn the techniques, acquire the
     information, and develop the facility needed for average performance in a specific job-worker situation. Dictionary of
24   Occupational Titles (U.S. Department of Labor, 1991), Appendix C.

25        [3] Dictionary of Occupational Titles § 250.357-018 SALES AGENT, REAL ESTATE:  Rents, buys, and sells
     property for clients on commission basis: Studies property listings to become familiar with properties for sale. Reviews
26   trade journals and attends staff and association meetings to keep informed of marketing conditions, property values, and
     legislation which would affect real estate industry. Interviews prospective clients to solicit listings. Accompanies
27   prospects to property sites, quotes purchase price, describes features, and discusses conditions of sale or terms of lease.
     Draws up real estate contracts, such as deeds, leases, and mortgages, and negotiates loans on property. Must have
28   license issued by state. May hold broker's license and be designated Real-Estate Broker (real estate). May assist buyer

1   work in accordance with the Commissioner's definitions by job title, skill and exertional level.

2   (A.R. 47.)  In doing so, the vocation expert determined that Plaintiff's employment as a time share

3   agent was classified as a real estate sales person. (*Id.*)  Neither Plaintiff nor her counsel disputed

4   this classification during the hearing.  After reviewing the Dictionary of Occupation Titles (DOT)

5   used by the Commission, it appears there is not a specific classification for time share sales agent.

6   The vocational expert reasonably found the job description that best matched Plaintiff's actual

7   duties and provided that classification to the ALJ.

8        Plaintiff testified that her duties as a time share sales agent involved "a lot of walking and

9   sitting, and then walking again and then driving the car, and getting in and out and all that." (A.R.

10  37.)  This appears consistent with the light exertional level assigned to a real estate sales agent

11  which "requires a good deal of walking or standing, or when it involves sitting most of the time

12  with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).  Further, it

13  appears Plaintiff agrees that the duties of a real estate sales agent and a time shares agent

14  substantially overlap.  Plaintiff explains that a real estate sales agent would require a lot of walking,

15  standing and bending, and show several properties in a single day.  (*See Plaintiff's Reply (#31)* at 3-

16  4.)  Plaintiff also states "[t]he light real-estate sales person should be referred to as a timeshare

17  sales agent." *(See Plaintiff's Motion (#25)* at 4.)

18       Further, the fact that Plaintiff does not hold a real estate license as required by the DOT's

19  definition of a real estate sales agent, has no bearing on whether Plaintiff can perform a full range

20  of light work.  The  Court therefore finds that the ALJ did not commit legal error in determining

21  that Plaintiff could perform her past relevant work.

22  . . .

23  _____

24  and seller in obtaining pertinent information or services, such as finance, maintenance, repair, or obtaining an appraisal.

25  May obtain pictures and measurements of rooms, doors, windows, or any other specified areas for inclusion in
    newspaper advertisement and real estate booklets listing description of property. May inspect property to determine if

26  repairs are needed and notify owner. May conduct seminars and training sessions for sales agents to improve sales
    techniques. May prepare closing statements, oversee signing of real estate documents, disburse funds, and coordinate

27  closing activities.

28

**CONCLUSION**

Having reviewed, considered and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision is supported by substantial evidence, and no legal error was committed.  In addition, the evidence submitted for Appeals Council review and the extra-record evidence submitted to the Court by Plaintiff does not warrant a remand for further proceedings.  Accordingly,

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that Plaintiff's Opening Brief/Motion for Remand (#25) be **denied** and the Commissioner's Cross-Motion to Affirm (#27) be **granted**.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 3rd day of May, 2012.

GEORGE FOLEY, JR.
United States Magistrate Judge

19